UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JONUTE SVIEN,

        Plaintiff,

v.

NAVY FEDERAL CREDIT UNION,     CIVIL ACTION NO.: 3:20-cv-00925

Serve:
Navy Federal Credit Union
5445 Glenside Dr,
Richmond, VA 23228

        Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jonute Svien ("Mr. Svien") alleges the following violations of his federal consumer protection rights against Defendant Navy Federal Credit Union ("NFCU"):

## INTRODUCTION

1. Count I of Mr. Svien's Complaint is based upon NFCU's violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment to make intrusive and unauthorized telephone calls to consumers. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Mr. Svien's Complaint is based upon Wisconsin Consumer Act

– Debt Collection ("WCADC"), Wis. Stat. §427.101. The WCADC is a statute that prohibits certain debt collection practices, including communicating with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer.

## JURISDICTION AND VENUE

3. Jurisdiction of the court arises under 28 U.S.C. §§1331 and 47 U.S.C. §227.

4. Federal question jurisdiction exists because NFCU's conduct violates Mr. Svien's rights under the TCPA, a federal statute.

5. NFCU's decisions regarding the credit card at issue are made in Virginia.

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that NFCU resides in, has physical locations in Eastern District of Virginia.

7. NFCU is "at home" in Virginia; therefore, personal jurisdiction is established.

## PARTIES

8. Mr. Svien is a natural person and a consumer residing in Wisconsin.

9. NFCU is a not-for-profit, federally-chartered credit union with its principal place of business and branch offices within Eastern District of Virginia. It has numerous physical branch offices throughout Virginia, including within the geographic boundaries of the Richmond Division.

10. NFCU acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. NFCU is attempting to collect one or more alleged debts from Mr. Svien, originating from a Visa credit card.

12. The alleged debts arose from consumer transactions.

13. NFCU's Credit Card Agreement and Disclosure contains a choice of law provision that provides that Virginia law applies.

14. In or around February of 2020, NFCU began calling Mr. Svien.

15. On or about February 18, 2020, at approximately 10:24 am, Mr. Svien answered a call from NFCU and spoke with a representative.

16. After picking up the call, Mr. Svien noticed an unusually long delay and a short burst of dialing tones before NFCU's representative began speaking, consistent with the use of an automatic dialing system.

17. NFCU's representative informed Mr. Svien that it was attempting to collect a debt allegedly incurred by Mr. Svien on his credit card.

18. After going through the identification process, Mr. Svien informed the representative that he received a medical discharge after being in a collision and was hospitalized at a VA clinic receiving treatment. Due to his medical discharge, Mr. Svien was on a fixed income, and therefore he could not make a payment at the time.

19. Mr. Svien then instructed the representative to only communicate with him by mail going forward, thereby revoking consent to be called on his cellular phone.

20. Despite his request that NFCU only communicate with him in writing, NFCU continued placing calls to Mr. Svien 's cellular phone number (***) ***-1217, in an

attempt to collect his alleged debt.

21. The calls mainly originated from the numbers (703) 255-8062 and (888) 209-4086.

22. Upon information and belief, these numbers are owned or operated by NFCU.

23. Between May 17 and November, 2020, NFCU called Mr. Svien on his cellular phone no less than **ONE HUNDRED AND NINETY FOUR (144) times** after he had revoked consent.

24. NFCU is familiar with the TCPA and the WCADC.

25. NFCU called Mr. Svien almost every day for five months.

26. NFCU called Mr. Svien several times a day, up to four times a day.

27. NFCU called Mr. Svien at all times during the day, from early in the morning to late at night.

28. NFCU even called Mr. Svien on weekends.

29. Upon information and belief, NFCU has also called and texted, or attempted to call and text, friends and family of Mr. Svien with the intention that they would communicate to Mr. Svien that NFCU was attempting to collect a debt from him, causing Mr. Svien additional embarrassment and distress.

30. Upon information and belief, NFCU called Mr. Svien and delivered prerecorded or artificial voice messages.

31. Upon information and belief, NFCU's automatic dialer failed to return to the on-hook state within 60 seconds of completion of dialing

32.     NFCU's conduct was not only done willfully but was done with the intention of causing Mr. Svien such distress, so as to induce him to pay the debt.

33.     The frequency and methodology of NFCU's calls could reasonably be expected to threaten or harass Mr. Svien.

34.     NFCU's conduct was highly offensive, oppressive and outrageous, and exceeded reasonable collection efforts. NFCU's conduct was especially unreasonable because shortly after Mr. Svien explained he could not pay —a situation that could not be resolved in such a short time— NFCU called Mr. Svien relentlessly.

35.     As a result of NFCU's conduct, Mr. Svien has sustained actual damages including, but not limited to, stress, anxiety, embarrassment, humiliation, severe emotional and mental pain, and anguish.

36.     Each and every one of NFCU's telephone calls caused Mr. Svien distraction and temporary loss of use of his telephone line.

37.     Each and every one of NFCU's telephone calls caused Mr. Svien stress, anxiety, annoyance, frustration, humiliation, anguish, embarrassment, trouble sleeping, headaches, mental and physical pain, as well as alerted other people that he was getting constant phone calls that caused him noticeable anxiety, annoyance and embarrassment.

38.     The TCPA was enacted by congress to address the very kind of conduct by NFCU that caused Mr. Svien's injuries.

39.     Upon information and belief, NFCU knows that its conduct toward Mr. Svien, described at length herein, violated the TCPA and was likely to cause the injuries that Mr. Svien suffered.

## COUNT I

### Violations of the TCPA, 47 U.S.C. §227

40. Mr. Svien incorporates the foregoing paragraphs as though the same were set forth at length herein.

41. NFCU violated the TCPA. NFCU's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, NFCU violated 47 U.S.C. §227(b)(1)(A)(iii) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."

   b. Within four years prior to the filing of this action, on multiple occasions, NFCU violated 47 U.S.C. §227(b)(1)(B) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . ."

   c. Within four years prior to the filing of this action, on multiple occasions NFCU willfully and/or knowingly contacted Mr. Svien at Mr. Svien's

cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and, as such, NFCU knowingly and/or willfully violated the TCPA.

42. As a result of NFCU's violations of 47 U.S.C. §227, Mr. Svien is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that NFCU knowingly and/or willfully violated the TCPA, Mr. Svien is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §§227(b)(3)(B), (C).

## COUNT II

### Violations of the WCADC, Wis. Stat. §427.101 *et seq*.

43. Mr. Svien incorporates the foregoing paragraphs as though the same were set forth at length herein.

44. NFCU violated the WCADC. NFCU's violations include, but are not limited to, communicating with Mr. Svien or a person related to Mr. Svien with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass Mr. Svien. Wis. Stat. §427.104(1)(g).

45. As a result of NFCU's violations of the WCADC, Mr. Svien suffered damages as more fully described above. As a result of, Mr. Svien is entitled to recover actual damages including emotional distress or mental anguish, punitive and statutory damages. §§427.105(1), 425.304.

46. The WCADC further entitles Mr. Svien to recover his attorneys' fees and

costs. §425.308.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Mr. Svien hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jonute Svien demands judgment be entered against Defendant Navy Federal Credit Union for the following:

A. Declaratory judgment that NFCU violated the TCPA and the WCADC;

B. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B);

C. Statutory damages of $1500.00 for each and every knowing and/or willful violation pursuant to 47 U.S.C. §227(b)(3)(B), (C);

D. Actual, punitive and statutory damages pursuant to Wis. Stat. §§427.105(1), 425.304;

E. Attorneys' fees and costs pursuant to Wis. Stat. §425.308;

F. Awarding Mr. Svien any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

**JONUTE SVIEN**

By: _____/s/_____
Susan M. Rotkis
Virginia Bar No. 40693

        Attorney for Plaintiff
        Price Law Group, APC
        382 S. Convent Ave.
        Tucson, AZ 85701
        T: (818) 600-5506
        F: (818) 600-5405
        susan@pricelawgroup.com